IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

LINDA BURKETTE,                )
                               )
     Plaintiff,                )
                               )
     v.                        )      CIVIL ACTION NO.
                               )       2:02cv403-MHT
H.R. III, L.L.C.               )          (WO)
d/b/a Hardees,                 )
                               )
     Defendant.                )

                            OPINION

     The question presented is whether, when a court has had

to excuse a black juror from a selected jury for personal

reasons, the court should then excuse a white juror so as to

maintain the racial balance of the jury.  The answer is

simple: no.

     In this employment discrimination case, plaintiff Linda

Burkette, an American woman of African descent, alleges that

defendant H.R. III, d/b/a Hardees, discharged her as manager

at one of its restaurants because of her race, in violation

of Title VII of the Civil Rights of 1964, as amended, 42

U.S.C.A. §§ 1981a, 2000e through 2000e17, and the Civil

Rights Act of 1866, as amended, 42 U.S.C.A. § 1981.   On January 9, 2006, the court oversaw the selection of the jury that will decide this case.   The jury selection process resulted in a 10-member jury, with six of the jurors being white and four being black.

At the time the jury was empaneled, this case was set to be tried on Wednesday, January 11.   Because another trial ran longer than expected, this trial was reset to Wednesday, January 18.   Upon learning of the new trial date, one of the jurors, a black woman who is a physician, asked the court to be excused from the panel.   She had rescheduled over 80 patients who suffer from hypertension, diabetes, and other health problems from January 11 and 12 to January 18 to accommodate the original trial setting.   Based on the new trial date, she would have to re-reschedule those patients, which would delay for more than a week needed medical tests and treatment for those patients and could place the health of some of those patients at serious risk.

Following an on-the-record conference, the court excused the juror.  Although Burkette agreed that the juror should be excused, she asked the court to excuse a white juror to maintain the racial balance of the jury panel.  The court declined.  This opinion now explains the basis for that ruling.

In the latter part of the last century, the laws governing jury selection developed considerably.  The most important and laudatory of the changes were those that sought to rid the jury selection process of all race and sex discrimination.  See United States v. Johnson, 790 F. Supp. 269, 272 (M.D. Ala. 1992) (Thompson, J.).[1]  This goal has profound significance because, for many years, courts

_____

1.   Though the case law focuses primarily on the rights of criminal defendants, courts have also recognized the harm to the potential juror who is excluded.  Edmundson v. Leesville Concrete Co., Inc., 500 U.S. 614, 619 (1991). Thus, although challenges to the jury-selection process in criminal cases turn on both Sixth Amendment and equal-protection principles, in civil cases the analysis rests squarely on the violation of the equal-protection rights of the potential juror.  Id.  Because this civil case is in federal court, the court must analyze the equal-protection component of the Fifth Amendment's due-process clause.  Id. at 616.

systematically excluded blacks and others from serving on juries.

At its most basic level, this laudatory goal can be broken into two distinct propositions.  First, the law ensures that all citizens, without regard to factors that have nothing to do with a person's character, have an equal opportunity to be part of the group from which juries and jurors are later selected for particular cases.  Edmundson v. Leesville Concrete Co., Inc., 500 U.S. 614, 619 (1991); Powers v. Ohio, 499 U.S. 400, 404, 410-15 (1991).  "To this end, each district court in the federal system must adopt a plan for locating and summoning to the court eligible prospective jurors. ... This plan, as with all other trial court procedures, must implement statutory policies of random juror selection from a fair cross section of the community ... and non-exclusion on account of race, color, religion, sex, national origin, or economic status. Edmundson, 500 U.S. at 622.  Burkette did not challenge this court's plan for locating and summoning of eligible

4

prospective citizens for jury service, so the first factor

is not at issue here.[2]

Second, the law ensures that once that the group from

which juries and jurors are to be selected has been

established (that is, the "jury wheels" have been randomly

created), the process that then leads to the selection of a

particular jury in a particular case must not permit any of

the participants--lawyer, party, and even the court itself--

to exclude a juror because of an impermissible factor, such

as race.  See Edmundson, 500 U.S. at 619.  This proposition

has an important corollary: the makeup of a particular panel

is shaped only by the non-discriminatory factors of chance,

dismissals for cause, and peremptory strikes based on

---

2.   This federal district, the Middle District of
Alabama, which covers 23 counties and is divided into three
divisions, adopted a written plan for jury selection, and,
every four years, under the plan, the court constructs a
master jury wheel by randomly selecting from the registered
voters of each of the counties in the district.  United
States v. Clay, 159 F.Supp.2d 1357, 1359 (M.D. Ala. 2001)
(Thompson, J.).  The jury selection plan instructs the clerk
of the court to select randomly from the master wheel a
sufficient number of persons to maintain an adequate number
of names in the qualified jury wheels for each of the
district's divisions.  Id.

permissive reasons.   Burkette does not contend that Hardees struck any jurors based on their race, but rather argues that this court should dismiss a white juror to maintain the racial balance of the panel now that a black juror has been dismissed.   This argument implicates the corollary and must be rejected for three reasons.

First, this juror has been released from service simply and solely by the happenstance, or chance, of changed circumstances.   Because the trial date shifted, the juror would be forced to reschedule her appointments; her patients would run the risk of health consequences were she not released.   Her dismissal therefore had nothing to do with her race, but rather with the unforeseen fact that an earlier trial forced her jury service to be delayed, with the result that the demands of her profession no longer allowed her to continue as a juror.   Happenstance was as responsible for her dismissal from the panel just as it was for her selection.

Moreover, just as it would have violated the black juror's equal-protection rights for a lawyer or party, in the initial jury selection process on January 9, to have dismissed her as a juror simply <u>because she is black</u>, <u>Edmundson</u>, 500 U.S. at 619; <u>Batson v Kentucky</u>, 476 U.S. 79 (1986), it would violate a white juror's equal-protection rights for the court itself to dismiss that juror simply <u>because he or she is white</u>.  Such an action would clearly run afoul of the equal-protection component of the Fifth Amendment:  The United States, ironically in this instance acting through the court itself, would be denying a juror the right to serve on a jury solely because of his or her race.

Finally, it bears repeating that no party has a right to a jury of any particular composition.   <u>See</u> <u>Taylor v. Louisiana</u>, 419 U.S. 522, 538 (1974); <u>United States v. Green</u>, 742 F.2d 609, 611 (11th Cir. 1984).  Burkette's argument here is ultimately based on the mistaken assumption that she is entitled to a jury panel of a particular racial

composition.   That assumption smacks of the same sort of

stereotyping that kept blacks and women off of juries

through  much  of  this  nation's  existence  and  must  be

rejected.

DONE, this the 19th day of January, 2006.


                                /s/ Myron H. Thompson
                           UNITED STATES DISTRICT JUDGE